```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


   * * * * * * * * * * * * *
   UNITED STATES OF AMERICA    *
                               *   CRIMINAL ACTION
                 v.            *   No. 22-10328-RGS-1
                               *
   AHSAN ARTY                  *
                               *
   * * * * * * * * * * * * *



         BEFORE THE HONORABLE RICHARD G. STEARNS
                UNITED STATES DISTRICT JUDGE
                         DISPOSITION
                      November 2, 2023


   APPEARANCES:

          UNITED STATES ATTORNEY'S OFFICE, (By AUSA Philip A.
     Mallard) 1 Courthouse Way, Suite 9200,  Boston,
     Massachusetts, 02210, on behalf of the United States of
     America

          ZALKIND DUNCAN & BERNSTEIN, LLP, (By Rachel Stroup,
     Esq.) 65A Atlantic Avenue, Boston, Massachusetts
     02110, on behalf of the Defendant




                                    Courtroom No. 21
                                    1 Courthouse Way
                                    Boston, Massachusetts 02210


                      James P. Gibbons, RPR, RMR
                        Official Court Reporter
                     1 Courthouse Way, Suite 7205
                      Boston, Massachusetts  02210
                         jamesgibbonsrpr@gmail.com
```

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  All rise.
 3         (Whereupon, the Court entered the courtroom.)
 4              THE CLERK:  Court is open.  You may be seated.
 5         This is criminal matter No. 22-10328, United States of
 6    America versus Ahsan Arty.
 7         Would counsel please identify themselves for the
 8    record.
 9              MR. MALLARD:  Good afternoon, your Honor.  Philip
10    Mallard for the United States.
11              MS. STROUP:  Good afternoon, your Honor.  Rachel
12    Stroup for Mr. Arty.
13              THE COURT:  Thank you, counsel.
14         All right.  The matter is before the Court for
15    sentencing.
16         In preparation for the sentencing itself, obviously I
17    have reviewed the Presentence Report, as I know counsel have
18    as well.
19         I have a memorandum from the government in support of
20    the sentencing recommendation being made jointly under the
21    (C) provision of Rule 11.
22         I also have a memorandum submitted on behalf of
23    Mr. Arty.  The most interesting portions of which are the
24    number the letters from family members, including:  Mother,
25    father, aunts -- no, no aunts -- uncles, those who perhaps
```

1    know him best.  But they all pretty much have the same thing
2    to say, which is that he had a very troubled start to his
3    life, certainly is responsible for a lot of mistakes and
4    crimes, but has seemed to have turned -- at least persuaded
5    himself that it's time to turn a corner, that he has taken
6    some positive steps to do exactly that.
7            On balance, I am going to accept the plea.  I can see
8    that there are large benefits for both sides in the
9    agreement that was reached, and I think the sentence, while
10   it's a long one, still is seven -- well, well below what
11   could have been the exposure in the case.
12           The government, of course, gets the benefit of the plea
13   itself in being relieved of the burden of trial.
14           So I see the agreement as fair to both sides, and I
15   think, therefore, one that I would accept and will do so.
16           Although I know what the position is on sentencing, I
17   still think for the record let's begin with the government's
18   statement of reasons and recommendation.
19               MR. MALLARD:  Thank you, your Honor.
20       I will be brief with respect to the nature of the
21   crime.  Obviously there's a number of historical incidents
22   here.  I think the December 10, 2021, home invasion really
23   jumps off the page, so to speak, in terms of the defendant's
24   personal involvement in that and the use of a firearm to
25   target the residents of that location for drugs.

1        That case if prosecuted in State court would have been
2   a 20-year sentence under State provisions.
3        Obviously, we are here in Federal court, a place where
4   we've come to an agreement by the parties.  That's a serious
5   sort of -- that would have been a huge landmine for the
6   defendant had that case been put together.  He would have
7   faced the better part of his adolescence and young adulthood
8   in prison for that one case alone.
9        Moving on, there's the home invasion in Everett, the
10  burglary, another extremely serious incident.
11       The defendant's participation in the earlier brake-in,
12  and the brazen nature of his use of Snapchat while inside of
13  the targeted residence, it screams for justice.  It screams
14  for a significant period of incarceration.  That he was
15  unsuccessful sort of makes this all the more ironic, and
16  that following that attempted theft and that burglary or
17  break-in and theft of the clothing -- they call it "drip" --
18  the next day, that this crime even escalated further to
19  gunshots being fired is just -- it's almost a bridge too far
20  for the government, and that's why we're here talking about
21  double digits.
22       The defendant certainly wasn't in the building that
23  day, but he knew about it, facilitated it, and was
24  essentially an accessory after the fact for those
25  individuals.  And he was also part of the precipitation of

1  that because were it not for his understanding of that
2  location and the circumstances, it wouldn't have been
3  targeted on the second day.
4      Moving on from that day, on February 10 and 11, the
5  same animosity between the defendant and victims in that
6  incident sort of played itself out with respect to the
7  defendant's arrest for the machine gun.
8      Now, on its own that machine gun case would draw a
9  substantial sentence from this Court.  That's a serious
10 firearm, a serious weapon, and obviously, based upon the
11 defendant's other instances and incidents, the charge in
12 this case alone -- those firearms aren't meant for the wall,
13 they're not meant for collector's items.  There's a purpose
14 and a reason for the defendant to have them.  And the
15 defendant's own words in text messages from recovered
16 devices substantiate that alone.  Those firearms in the car
17 and that machine gun in particular were going to be used to
18 target others.
19     In this case it was going to be used to target the same
20 individual whose residence they broke into on two occasions.
21 That individual, for whatever reason, decides to display
22 wealth on social media.
23     The defendant, for the better part of the time he was
24 on release, decided to target those individuals who
25 displayed wealth.  Sort of a code of the west, so to speak.

1   The ill-gotten gains that were displayed on Instagram became
2   the targets of this defendant's violence against them.
3         The last thing I'll say is the four kilograms stolen
4   from California that were shipped and the other nature of
5   the drug-trafficking activity...  Obviously the drugs sort
6   of play a minor role with respect to this case.  However, as
7   we are a Federal court, that underlying level of drug
8   activity is almost a necessity with respect to federal
9   charging for some of these offenses.
10        Those firearms were obtained and used by an individual
11  not only engaged in violent offenses, but he was attempting
12  to rob places to get drugs, to get proceeds of drugs, and
13  also robbing to get drugs through the theft in California.
14  Drugs play an underlying sort of baseline to this case, and
15  it's important to understand that context.  Again,
16  individually that drug case alone would merit a substantial
17  sentence.
18        But here we are, and the defendant gets the benefit of
19  what's sort of a bulk discount.  Counsel and I have
20  negotiated this sentence over many months, protracted
21  discussions, a review of police reports, conversations about
22  what could and what could not be proven.
23        And ultimately I think it's to the defendant's credit
24  that we're here talking about his admission of guilt towards
25  all these acts that he knows that he committed, that the

1   government has evidence he could have -- that the government
2   has evidence that could have been used to prove him guilty
3   of that.  But instead of waiting for that hammer to drop
4   from me charging him with those incidents substantively, he
5   decided to get in front of those crimes, those incidents,
6   and admit formal guilt as part of this global resolution.
7       I think that's the silver lining here.  I think that's
8   what's going to speak towards his rehabilitation.  This
9   isn't a situation where you hide behind your right against
10  self-incrimination or your right to a jury trial.  It's
11  about taking ownership of himself, the things that he's
12  done, and the path forward that he has in the remainder of
13  his life.
14      He leaves a trail of destruction in his wake, both in
15  terms of the crimes that are charged here and the other
16  crimes that counsel and I have discussed that did not make
17  their way into this plea agreement, that just simply didn't
18  have enough evidence to be proven or otherwise.
19      There's a lot to be said for this defendant I think
20  positively.  I think his family made a really wonderful
21  portrayal of him, and I'm really distressed and disheartened
22  that I don't have that same understanding of him.  I see him
23  from the viewpoint of the victims and the think people that
24  he targeted.
25      All told though, your Honor, I think this 120-month,

1   ten-year, sentence, even accounting for the credit that he
2   has from State court, is a serious blow.  It's going to take
3   up the better part of this defendant's twenties, and it's
4   going to put him in a place to have his thirties in front of
5   him.
6          That's a gift I think from the Federal government for
7   this defendant for these crimes, but it's one that he's sort
8   of earned, I think, with respect to what his counsel and he
9   have been willing to do with respect to admitting guilt up
10  front for some of these crimes.
11         I think this overall sentence is consonant with
12  justice.  I think there's a measure of leniency on the part
13  of the Government, and there's a measure of sort of
14  ownership and recognition of your own crimes on the part of
15  the defendant.
16         Overall, your Honor, I think that this sentence accords
17  with the sentencing factors.  It provides a swift message of
18  specific deterrence to the defendant and also generally to
19  others that would engage in similar crimes as the defendant.
20         And I'd also note, as I noted in my memo, that this
21  defendant is not some wall flower in and amongst his
22  community.  He's a very well-known member of certain groups
23  and gangs, if you want to call them that.  He's well known
24  amongst his peers.  He was a popular individual.  A popular
25  individual both for his personality, I would imagine, and

1   also for the crimes that he committed that were of rather *la*
2   *notorietà*, essentially robbing the person on Instagram of
3   all of that money from that burglary and that attempted
4   robbery at the nightclub, that bolstered his reputation on
5   the street.
6       So for this individual with such a reputation to take
7   ownership of his crimes is a really valuable general
8   deterrent message that I think should be sent and will be
9   sent by this plea.
10      There is also public protection. I think that's also
11  considered here. One-hundred-twenty months is a significant
12  sentence for a first-time offender. He's admitted to that.
13  He's agreed to that sentence.
14      There's value there in not only in public protection,
15  but also with respect for the law; that this ten-year
16  sentence is coming at the defendant's request and the
17  Government's.
18      I'd ask the Court to impose the sentence for all the
19  reason I mentioned in the memorandum. I'd also ask the
20  Court to impose it based upon the sentencing factors and
21  also as it's in the middle of the Guidelines.
22      Thank you.
23          THE COURT: I think you lay out the equities well.
24      Ms. Stroup.
25          MS. STROUP: Thank you, your Honor.

1          I will be brief in light of the Court's acceptance of
2    the parties' plea agreement.
3          As the government has recognized, Mr. Arty has taken
4    responsibility for his conduct.  He recognizes the
5    seriousness of the charges that he faced, and he has pled
6    guilty to them and is accepting a significant term of
7    imprisonment for his actions.
8          He's also committed to turning his life around.  And as
9    you can sees from the letters of support that I submitted,
10   he has strong family support that will help him to do that.
11         Many of his family members are here today.  They are
12   aware of his conduct, and they hold him accountable for it.
13   But they are also standing ready to support him through his
14   time of incarceration.  And upon his release, he has an
15   uncle that has offered to provide him with a job when he's
16   out.
17         THE COURT:  This is the uncle that wrote the letter
18   to me, right.
19         (Pause in proceedings.)
20         MS. STROUP:  No, not here.  He's not here today.
21   Everyone who could be here today is.
22         And so he has the support that he will need when he
23   re-enters the community.
24         The sentence that is proposed in the plea agreement of
25   120 months, it's a significant sentence, as the government

1   noted, and satisfies all of the factors set forth in 3553.
2          And in particular, as the government noted, Mr. Arty he
3   had done pretrial detention, but he's never served a term of
4   imprisonment before.  This is his first one, and he's
5   getting a term of 120 months.
6          We do ask that he not be required to pay a fine.
7          We are also asking that the Court defer imposition of
8   sentence until after the holidays so that he's not shuffling
9   around between institutions over the next two months.
10         And so those are the reasons that we're asking for the
11  agreed-upon disposition.
12              THE COURT:  I'm not sure I can defer a sentence.
13         Mr. Mallard, do you know?  I'm not sure what you have
14  in mind.
15              MS. STROUP:  I'm not sure if there was a way for
16  you to hold off on entering judgment or --
17              THE COURT:  I'm required to do that within seven
18  days.
19              MS. STROUP:  Okay.
20              THE COURT:  But otherwise I understand what you are
21  saying, but bureaucracy being what it is, you may get your
22  wish in any event.
23         One thing that puzzled me is that everyone has pointed
24  to the good things about Mr. Arty, and I think that's fair
25  under the circumstances.  Looking at his involvement as a

1  juvenile, the juvenile court, it seems to me, there was a
2  real failure in that court to recognize that some kind of
3  intervention was needed.  No one seemed to take his early
4  engagements with the type of seriousness that I would have
5  thought that a juvenile court is designed to do.
6         MS. STROUP:  Agreed, your Honor.
7         THE COURT:  That was the one thing that struck out
8  at me.
9      But obviously I was impressed by what the family
10 members had to say about him and about how he does seem to
11 be taking fairly, as I think the prosecutor said, ownership
12 of his conduct, which I think is commendable.
13     Mr. Arty, you have the right to address the Court.  It
14 is not a requirement.  If you would like to speak personally
15 to the Court, you have the right to do so.
16        THE DEFENDANT:  I just want to apologize and take
17 responsibility for my actions.  I'm ready to work and
18 rehabilitate and turn my life around, and I'm sorry to
19 everyone that I hurt.
20     Thank you.
21        THE COURT:  Well, one thing I will say, I would
22 always choose college over jail, but the Federal Bureau of
23 Prisons does have a lot of resources; that if you're willing
24 to take advantage of them, a lot of the areas that you're
25 looking for self-improvement in, I think you're going to

1 find that you'll get help.

2 But again you have to affirmatively accept it, but I
3 think you've reached that state of mind where that's
4 something you would do, and so I think it may not be the
5 worst thing that ever happened in your life. It certainly
6 is a good thing when you think of what the alternative could
7 have been but for the good work of your counsel and the
8 Government's commitment to reach a fair resolution of the
9 case.

10 That being so, I am going to, as I said, adopt the
11 recommendation made by counsel as follows: Pursuant to the
12 Sentencing Reform Act of 1984, and having considered the
13 sentencing factors enumerated at 18, United States Code,
14 Section 3553(a), and considering the plea agreement reached
15 between you and the government, it is the judgment of the
16 Court that you be imprisoned for a term of 120 months, to be
17 served concurrently on Counts One and Two.

18 The Court will make a judicial recommendation that you
19 participate in substance-abuse treatment while in the Bureau
20 of Prison's custody.

21 It will also make a judicial recommendation that you
22 participate, as available, in a vocational training program
23 to help prepare for your re-entry into civilian life.

24 Upon release from custody, you will be placed on
25 supervised release for a term of three years, again to be

1     served concurrently on Counts One and two.
2         Within 72 hours of release from custody of the Bureau
3     of Prisons you must report in person to the Probation Office
4     in the district to which you are released.
5         The Court does not impose a fine, as you clearly do not
6     have the capacity to pay a fine.
7         Was there any forfeiture involved, Mr. Mallard?
8         (Pause in proceedings.)
9             THE COURT:  I don't recall a motion for --
10            MR. MALLARD:  I don't have any listed in the plea
11    agreement, Judge.  They would have made me put it in there
12    if there was, so I don't believe so.
13            THE COURT:  While on supervised release you will
14    comply with the following terms and conditions:  You will
15    not commit any federal, state, or local crime.
16        You will not unlawfully possess a controlled substance.
17        You must refrain from any unlawful use of a controlled
18    substance and submit to one drug test within 15 days of
19    release from custody and at least two periodic tests
20    thereafter, not to exceed 104 tests per year.
21        You are required by law to cooperate in the collection
22    of a DNA sample as directed by your Probation Officer.
23        You will comply with the standard conditions as
24    outlined by the Court and which are described in United
25    States Sentencing Guideline Section 5D1.3C.  These will be

1    set forth in more detail in the Judgment.
2         The Court will impose the following special conditions:
3    Again, drug testing as previously stipulated by the Court,
4    and I'm going to prohibit you from drinking alcohol to the
5    point of intoxication, which is defined under Massachusetts
6    law as a .10 blood alcohol level.  I'm not saying you can't
7    drink, but I'm saying you're not going to drink to excess.
8    That would be a violation of your conditions of release.
9         It is further ordered that you pay to the United States
10   of special assessment of $200, which, by operation of law,
11   is due immediately.
12        Since there was a waiver of the right of appeal as part
13   of the plea agreement, no advice of the appellate right is
14   required.
15        All right, Mr. Arty, you're getting, I think, a pretty
16   substantial -- "break" I guess is the colloquial word you
17   would use, but I think a chance to take a real head start in
18   turning yourself around, and I have some confidence that you
19   will be able to do it.  So good luck.
20        All right.  Thank you, counsel.  I know a lot of work
21   went into this.
22             MR. MALLARD:  There is only one thing I would just
23   note for the Court.
24        I don't think the Court made any specific findings as
25   to the PSR and adoption of the factual findings in there,

1  but in order to make sure that he gets credit for the 37
2  months of pretrial detention here -- well, obviously here,
3  but in the State court for the underlying cases that were
4  adopted, I just wanted to note that my calculation was 37
5  months.  I think the Court would need to actually formally
6  adopt the PSR to make sure that BOP credits him for that
7  time for the related cases.
8              THE COURT:  I think that's fair enough, and that's
9  certainly in his interest.  He should get credit for the
10 time that he's otherwise served.
11     All right, so I will follow that recommendation and
12 adopt the PSR findings with respect to prior detention.
13     Obviously I accept the Guideline findings, but this is
14 a sentence that falls, I think, squarely in the center of
15 the Guidelines, if I read them correctly.
16     All right.  Good luck, Mr. Arty.
17             THE DEFENDANT:  Thank you.
18             THE COURT:  We'll otherwise be in recess.
19             MS. STROUP:  Thank you, your Honor.
20             THE CLERK:  All rise.
21    (Proceedings adjourned.)

# **C E R T I F I C A T E**

I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons            September 20, 2024
   James P. Gibbons

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jamesgibbonsrpr@gmail.com